**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YUN ZHU,<br><br>Plaintiff,<br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants. | Civil Case No.: 2:26-cv-00970-WSS |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT ORDER AND PERMANENT INJUNCTION**

Plaintiff Yun Zhu submits this Memorandum in support of its Motion for Entry of Default Judgment Order and Permanent Injunction against the two remaining—but defaulted—defendants[1] ("Defaulted Defendants"). *See* [ECF No. 52]

## I. INTRODUCTION

Plaintiff respectfully requests this Court to grant a default judgment order and permanent injunction against the Defaulted Defendants pursuant to Fed. R. Civ. P. 55(b), awarding relief to Plaintiff. Despite being properly served in accordance with this Court's May 18, 2026 Order authorizing service by alternative means [ECF No. 9], Defaulted Defendants failed to respond to Plaintiff's Complaint, and the Clerk has entered default against Defaulted Defendants [ECF No. 52]. As a result, the factual allegations of

[1] Expediated discovery has shown that both Defaulted Defendants have only nominal balance in their Amazon accounts.

Plaintiff's Complaint [ECF No. 1] are taken as true and a Default Judgment Order and Permanent Injunction should issue.

## II. STATEMENT OF FACTS

1. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and/or selling infringing versions of Plaintiff's federally registered patent US D1,081,175 (the "Infringing Products") to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identity and the full scope and interworking of their infringing operation. *See* Complaint [ECF No. 1] at ¶ 1.
2. Plaintiff is the inventor and owner of United States Patent No. D1,081,175 entitled "Sofa" (hereinafter "Patent-in-Suit"). The U.S. registration for the Patent-in-Suit is valid, subsisting, and in full force and effect. *See* Complaint [ECF No. 1] at ¶¶ 5, 11.
3. Plaintiff estimates the cost of developing the Patent-in-Suit was around $50,000.00 in 2024. Plaintiff has invested significant time, money, and manpower into the promotion of the Patent-in-Suit products, including advertising, promotions, and online publications. *See* Declaration of Yun Zhu [ECF No. 11-3] at ¶ 3.
4. Plaintiff started to launch the Patent-in-Suit products and received great commercial success. Plaintiff's products protected by the Patent-in-Suit quickly

won market recognition due to its excellent performance, user-friendly and innovative design, novel limitations, and high-quality user experience. Plaintiff's products protected by the Patent-in-Suit have been widely popular and quickly occupied a leading position in the field. Plaintiff's products protected by the Patent-in-Suit have become recognized by consumers as high quality products sourced from Plaintiff. *See* Complaint [ECF No. 1] at ¶¶ 9, 12-13.

5. The infringing behavior by Defendants severely impacts Plaintiff's patent rights and undermines the fair competition environment in the market. The sales of Plaintiff's products protected by the Patent-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded. The infringing behavior of these Seller Aliases has diminished Plaintiff's patent rights and resulted in loss of exclusivity. Plaintiff has not been able to realize the return of investment in the products protected by the Patent-in-Suit. Plaintiff has lost profit, market share, sales volume, marketplace rankings and visibility, control over the rights in the claimed invention, reputation, associated goodwill, and ability to exploit the protected invention. *See* Complaint [ECF No. 1] at ¶¶ 15-17.

6. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Patent-in-Suit. *See* Complaint [ECF No. 1] at ¶ 18.

7. Defendants are anonymous partnerships, individuals, and/or unincorporated associations who target sales to Pennsylvania residents by setting up and

operating various "storefronts" under aliases via online retail websites accepting U.S. Dollars. Defendants target Pennsylvania consumers by selling, offering to sell, and/or shipping products that infringe the Patent-in-Suit. Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A. *See* Complaint [ECF No. 1] at ¶¶ 20-22.

8. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. The e-commerce stores operating under the Seller Aliases offer to sell, and stand ready, willing, and able to sell and ship Infringing Products to the United States, including Pennsylvania. Defendants' use of the Patent-in-Suit in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff. *See* Complaint [ECF No. 1] at ¶¶ 34, 37, 39.

9. Defendants, directly or through intermediaries, offer to sell, sell, and ship products which infringe the Patent-in-Suit. Defendants are making, using, offering for sale,

selling, and/or importing into the United States, and Pennsylvania, for subsequent sale or use, Infringing Products that infringe directly and/or indirectly infringe the Patent-in-Suit. Defendants are directly infringing, literally infringing, and/or infringing the Patent-in-Suit under the doctrine of equivalents. The Infringing Products directly infringe the sole claim of the Patent-in-Suit. Defendants have been and are now actively infringing the claims of the Patent-in-Suit in the State of Pennsylvania, in this judicial district, and other jurisdictions in the United States by selling or offering to sell the infringing Patent-in-Suit products. Defendants' offering for sale, sale, and shipments of Infringing Products have caused and continues to cause Plaintiff to suffer irreparable harm through loss of Plaintiff's exclusive patent rights, loss of market share, loss of future profits, loss of reputation, and inability to realize a return on investment. *See* Complaint [ECF No. 1] at ¶¶ 47-52.

10. Defendants' offering for sale, sale, and shipment of Infringing Products into the United States, and Pennsylvania, was willful in nature based upon the dated history of the Patent-in-Suit, Defendants' actual or constructive knowledge of the Patent-in-Suit, the significant popularity of the Plaintiff's Patent-in-Suit products, and the anonymous nature of Defendants. *See* Complaint [ECF No. 1] at ¶ 53.

11. On May 29, 2026, Plaintiff served Defendants via email with copies of the Summons [ECF No. 25], Complaint and accompanying documents thereof [ECF

No. 1], the Order to Seal [ECF No. 8], the Order Authorizing Alternative Service [ECF No. 9], and the TRO (ECF No. 18). See Certificate of Service [ECF No. 27]; Return of Service [ECF No. 26].

12. Defaulted Defendants' answers or motions under Fed. R. Civ. P. 12 were, thus, due on June 22, 2026 [ECF No. 26].
13. Defaulted Defendants have failed to file an answer or otherwise respond within the time allotted by Fed. R. Civ. P. 12.
14. The Clerk has entered Default against Defaulted Defendants [ECF No. 52].
15. Defaulted Defendants are not minors or incompetent persons.
16. Defaulted Defendants are not in the U.S. military.

## III. JURISDICTION AND VENUE

This Court has original subject matter jurisdiction over the claims in this action, personal jurisdiction is proper, and venue is proper. *See* Plaintiff's Complaint [ECF No. 1] at ¶¶ 40-45; *See e.g. Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125 (W.D. Pa. 1997); *Murphy v. Rolex Watch USA, Inc.*, No. 1:23-CV-00086-SPB, 2024 U.S. Dist. LEXIS 84515 (W.D. Pa. May 9, 2024).

## IV. ARGUMENT

Pursuant to Federal Rule of Civil Procedure 55(b), this Court should enter a Default Judgment Order and Permanent Injunction against Defaulted Defendants.

///

///

**A. Default Judgment is proper.**

By failing to appear or otherwise defend against the Complaint, and through the Clerk's entry of Default, Defaulted Defendants are deemed to have admitted every allegation of Plaintiff's Complaint and the Court must only determine whether Plaintiff's Complaint properly states a claim for relief. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Pair Networks, Inc. v. Lim Cheng Soon*, 2013 WL 452565, *1 (W.D. Pa., February 6, 2013).

Patent infringement occurs where a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

Here, as mentioned, the allegations of the Complaint are taken as true, and Plaintiff's Complaint alleges sufficient facts to establish the necessary elements of its claims under 35 U.S.C. §§ 271(a), 281, and 284-85. Plaintiff's factual allegations in the Complaint establish that Defaulted Defendants are liable to Plaintiff for willful patent infringement, as seen above in the Statement of Facts. Plaintiff's Complaint alleges that Plaintiff owns the Patent-in-Suit with all rights to enforce, and that Defaulted Defendants have committed acts of patent infringement thereon, by offering for sale and selling infringing versions of products covered by Plaintiff's Patent-in-Suit. Plaintiff's Complaint

alleges that Defaulted Defendants' illegal conduct was willful in nature based upon the longevity of Plaintiff's Patent-in-Suit, the significant popularity of the Plaintiff's Patent-in-Suit products, and the anonymous nature of Defendants.

As such, the allegations contained in Plaintiff's Complaint, which must be taken as true due to Defaulted Defendants' default under Fed. R. Civ. P. 55(a), are more than sufficient to establish that the Defaulted Defendants are liable as a matter of law for each cause of action alleged in Plaintiff's Complaint.

**B. Permanent Injunction is proper.**

To demonstrate entitlement to permanent injunctive relief, the movant must generally "make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019).

Here, by entry of this Court's TRO [ECF No. 18] and PI [ECF No. 42], this Court has already found the above requirements to be met. Plaintiff submits that no facts or circumstances have changed that would render a permanent injunction unnecessary. *See Evony, LLC v. Holland*, No. 2:11-CV-00064, 2011 WL 1230405, at *7 (W.D. Pa. Mar. 31, 2011) ("In this case, Plaintiffs have achieved 'actual success on the merits' through the admission of liability arising from Defendant's default. Furthermore, the Verified Complaint establishes that Defendant unlawfully sells and distributes copyrighted and

trademarked material of the Plaintiffs. Nothing in the facts before the Court indicates that Defendant has ceased this infringing activity; thus, a permanent injunction is warranted in this case on all claims of the Verified Complaint.")

Nevertheless, Plaintiff will be irreparably harmed because Defaulted Defendants' actions, if allowed to persist, will continue to cause Plaintiff to suffer harm through lost market share, lost sales, loss of reputation, loss of exclusivity, and an inability to realize a return on investment and damage to its licensee. Here, Defaulted Defendants have and will continue to sell and/or offer to sell Infringing Products to the detriment of Plaintiff. Defaulted Defendants will collect and keep the proceeds, and thus, Plaintiff will lose the benefit of its patent.

Moreover, there is no adequate remedy at law because absent permanent injunctive relief, Plaintiff would be forced to repeatedly file suit any time against the Defaulted Defendants—who have shown disregard for their legal obligations and the jurisdiction of this Court—when they infringe Plaintiff's patent rights in the future. Here, Plaintiff's lack of control over Defaulted Defendants' unauthorized use of its patent weighs in favor of granting permanent injunctive relief. Indeed, permanent injunctive relief is the only adequate remedy to prevent the continued threat of infringement and irreparable harm.

Third, the balance of hardships weighs strongly in Plaintiff's favor as Plaintiff is threatened with significant irreparable injury if a permanent injunction is not issued.

Defaulted Defendants' actions have resulted in irreparable harm to Plaintiff. In fact, Defaulted Defendants do not face hardship from Plaintiff's permanent injunctive relief because "one who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Lawler Manufacturing Co. v. Bradley Corp.*, CAUSE NO. IP 98-1660-C M/S, 2000 U.S. Dist. LEXIS 14197, at *99 (S.D. Ind. Apr. 26, 2000) (citations omitted). Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defaulted Defendants' unlawful activities.

Fourth, the public will benefit from this injunction because the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Pennsylvania. A permanent injunction in this case is appropriate because the public interest lies in favor of upholding property interests in patents and preventing infringement. Here, there is no public interest in allowing Defaulted Defendants to infringe on the Patent-in-Suit and sell Infringing Products to the detriment of Plaintiff's dealers, retailers, and consumers. To the contrary, the public has a strong interest in obtaining legitimate, non-counterfeit products for their needs, as opposed to the unauthorized and illicit products being trafficked by the Defaulted Defendants.

**C. Plaintiff is entitled to compensatory damages in the amount of $10,000 per defaulted defendant.**

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "A reasonable royalty 'may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant.'" *Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:16-cv-03038, 2017 U.S. Dist. LEXIS 158532, at *11 (C.D. Ill. Sep. 27, 2017) (quoting *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995)). The "hypothetical negotiation approach 'requires the court to envision the terms of a licensing agreement reached as a result of a supposed meeting between the patentee and the infringer at the time the infringement began.'" *Id.* (quoting *Rite-Hite Corp.*, 56 F.3d at 1554)).

Here, Plaintiff requests compensatory damages of $10,000.00 per Defaulted Defendant based on the lost licensing fee, length of use, territory of use, consumer confusion, loss of reputation, loss of market, and demand. *See* Declaration of Yun Zhu, ¶¶ 4-6. Although a "hypothetical negotiation" is difficult to ascertain due to Defaulted Defendants' default, the factors listed above would determine an appropriate licensing fee. In this case, Plaintiff submits that, based on the factors above as described in the attached Declaration of Yun Zhu, the relief sought is a reasonable licensing fee that would result from a hypothetical negotiation between Plaintiff and each Defaulted Defendant.

## V. CONCLUSION

Plaintiff respectfully requests that this Court grant a default judgment against the two Defaulted Defendants and award damages in the amount of $10,000 and a permanent injunction against each Defaulted Defendant.

Plaintiff further requests that this Court Order the transfer of the restrained funds from the Third-Party Providers as partial satisfaction of this judgment.[2]

Date: August 15, 2026

Respectfully submitted,

/s/ Zheng "Andy" Liu
Zheng "Andy" Liu (CA- 279327)
***Aptum Law***
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Email: Andy.Liu@AptumLaw.us
Phone: 650-475-6289

*ATTORNEY FOR PLAINTIFF*

---

[2]Such orders are routinely entered by Courts in this District to satisfy monetary judgment awards in similar Schedule A cases. *See Nifty Home Products, Inc. v. Kafa Company, et al.*, No. 22-cv-1694 (W.D. Pa., September 12, 2023) (Colville, J.) [ECF No. 77]; *Talisman Designs, LLC v. Ahappyday*, No. 20-cv-1915 (W.D. Pa., February 24, 2022) (Colville, J.) [ECF No. 79]; *Talisman Designs v. Angelworld*, No. 21-cv-1292 (W.D. Pa., February 24, 2022) (Colville, J.); *Doggie Dental v. Ahui*, 19-1627 (September 27, 2021) (Hornak, CJ); *Airigan Solutions, LLC v. Belvia*, No. 20-cv-284 (W.D. Pa., April 21, 2020) (Schwab, J.); *Rapid Slicer LLC v. Art-House*, No. 19-411 (W.D. Pa., Jan. 9, 2020) (Horan, J.); *Airigan Solutions, LLC v. Abagail*, No. 19-cv-503 (W.D. Pa., Aug 13, 2019) (Fischer, J.); *Doggie Dental v. Anywill*, No. 19-cv-682 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Max_Buy*, 19-746 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Go Well*, 19-1282 (W.D. Pa., August 14, 2020) (Hornak, CJ); and *Doggie Dental v. Worthbuyer*, 19-1283 (W.D. Pa., August 14, 2020) (Hornak, CJ).